Good morning, Your Honors. If it pleases the Court, I'm Andrew Knapp. I'm here representing the petitioner, Maria Rodriguez-Echeverria. I would like to reserve 10 minutes for a rebuttal. I think, Your Honors, that the central issue in this case boils down to whether the government is correct in its assertions at page 34 of its brief that where there are no egregious circumstances that would warrant exclusion of the government's evidence, then any violation of the regulation would also not warrant the government's evidence be excluded. Now, if the government is not correct about that, if there are any circumstances short of an egregious violation, which would require excluding evidence obtained in violation of the agency's regulations, then to affirm the immigration judge's decision in this case. Which provision of the regulation of 287.3c, which provision? There are several provisions in there. Which one do you contend? Well, specifically, the petitioner is arguing that since she was under arrest at the time she was interrogated and made her sworn videotaped statement, that the government was first required to tell her that she had a right to consult with an attorney and that anything she said could be used against her in the subsequent removal proceedings. Is that a right that derives from the Constitution or from the regulation? Well, the right derives from the regulation. Okay. Where in the regulation? Let's start with right to counsel. Where in the regulation does it say that she had to be advised at the inception of interrogation of her right to counsel? Okay. H.C.F.R. 287.3c, governing the conduct of warrantless arrest, requires that an alien arrested without warrant will be advised of the reasons for her arrest. You just skipped over some key language. That's true, Your Honor. You need to read every word. Okay. Every word counts. Okay. I've got the regulation right here. Let's not. Index 30. Okay. The exact language of the regulation in its current form, it's notification and information. Why don't you start with examination first? With examination at the same subject. That's subdivision A. A. Subdivision A. Alien arrested without a warrant of arrest and so on will be examined by an officer other than the arresting officer. That starts the interrogation. All right. Next. Determination of proceedings. If the examining officer is satisfied there is prima facie evidence, then the examining officer will refer the case to the immigration judge. C. Then we get to notification. Now I'd be reliant. Okay. And other than in cases of expedited removal, an alien arrested without warrant and placed in formal proceedings under section 2. Stop. Just pay attention to what you're doing here. We have to construe this regulation in context. If you're going to do so. Would you agree that it starts with the inception of interrogation by someone other than the arresting officer, if possible? Yes, Your Honor. Okay. It starts there. Then the determination to be made by that interrogation is whether or not to refer for formal proceedings, correct? Correct. Okay. Then we look at the language and it says an alien arrested without warrant and placed in formal proceedings. Correct. Okay. So that's the predicate. When in the process does the alien become placed in formal proceedings? The alien becomes placed in formal proceedings when issued a notice to appear. All right. So how are you reading that language to say that the duty to inform of right to counsel arises upon the inception of interrogation before the determination has been made to place them into formal proceedings? There's two arguments for that position. The first argument is my understanding of the language. An alien arrested without warrant and placed in formal proceedings. It doesn't specifically say an alien arrested without warrant when placed in removal proceedings. And the second argument is because it says and. Right. But it doesn't necessarily say that the being placed in removal proceedings has to predate, has to occur prior to the advisers being given. That's the first argument.  Counsel, let's stop on that one for a second. Are you saying then that the decision of advising a counsel would be dependent on something that doesn't happen until the future? Well, the prior regulation, which is what the BIA's current not overruled case law has interpreted, had different language. And it states that when the interviewing officer determines that the alien will be placed into proceedings, then the advisers have to be given. And I think that's the central issue in this case, because the decision matter of Garcia Flores that set out the rule for when a violation of this regulation in its prior form could warrant suppression of evidence, since the regulation was modified, there hasn't been any published decision since then stating what Your Honor seemed to be finding, that there's no requirement to give these advisers until after the proceedings have been initiated. There's no dispute that when an NTA is served on the alien, the NTA itself has the adviser. It's kind of the cows have already left the barn. And that's true. And there may be an arguable logic to that construction of the regulation, arguable because the INS was not setting up a regime when they pull somebody out into secondary and put them into custodial interrogation to determine whether there's a prima facie case that they were creating a right to counsel at that stage of the proceedings. Arguable, correct? It's arguable. Okay, so let's move on to the Miranda warning, the regulatory warning of right to. The Miranda warning. Okay, regulatory warning, okay? That's correct. It's not constitutional, but go on. So then the rest of the paragraph notification and information, what's your argument with respect to that aspect of it? That aspect is that. That is to the timing aspect. Right, current not overruled board precedent requires that the advisers be given at the time of the arrest and the decision that the alien will be placed into removal proceedings. Same as the right to counsel notification. Right. And also in the 28-J letter I submitted, I did get a hold of the customs and border protections field manual, which specifically states that when this type of warrantless arrest occurs, the alien should be given up to two hours to contact counsel before interrogation commences. And even though that's not codified in the regulation, I think the Accardi rule establishes that it doesn't necessarily have to be a published regulation. That's a rule that the agency is required to file. But I think it all goes back to the fact that the primary error in this case was before the judge, the assertion was that the alien was under arrest. And that assertion was denied by the government counsel initially stating it was just a brief detention. It was only 18 hours. And the government in its brief. She was obviously free to leave. Right, exactly. And the government in its brief specifically conceded that the immigration judge held that the regulation did not apply because Rodriguez Echeverria was not arrested without warrant. And then the government goes on to say that the immigration judge apparently overlooked the report of investigation, which states that Rodriguez Echeverria was arrested. So there's clear evidence in the record that she was under arrest. And then despite the judge not ruling on this issue, despite it being raised in the appeal to the BIA, in spite of the DHS attorney addressing the issue as well and stating what your honors are stating, that the regulation wasn't violated because it doesn't apply until the NTA has been issued, the board summarily affirmed the immigration judge's decision without opinion. What do you think we should do in this case in light of what you've well laid out for us? What should we do as a matter of process? In a typical case where we weren't dealing with a long-term lawful permanent resident, where we're dealing with someone present in this country illegally trying to suppress identity and the fact that he's here in an attempt to remain here illegally, then I would say yes, remand it to the agency, because this is a very important question, and ask them to decide it. But in this case, since this is a long-term lawful permanent resident, and since the issue was repeatedly raised, not just by petitioner, but also by the government's counsel, and the board declined to rule on that question, then I don't think that remand is required. I think that just the defects in the proceedings below, despite ample opinion. Well, I mean, if we were to agree here that, I mean, not agree, but the government can, if we recognize that the I.J. was wrong in his determination that she was not under arrest, it seems like then it should go back to the board for them to apply this regulation to interpret it. Well, that's another remedy that we would be willing to accept, but of course, if you were to find that the government didn't establish removability by clear and convincing evidence. Well, I mean, that's debatable here. I mean, if you look at what her statements, it looks pretty much like she knew what she was doing. Well, again, there's challenges to that statement that it wasn't voluntarily given, and the BIA's own case law establishes that presumptively the I-213 is reliable because government officials have no bias in performing their duties, but once the alien contests the information contained in the I-213, then the government's required to come forward with evidence justifying how it was obtained, and I think that the transcription of a video that's since been lost that says that the statement was voluntarily given, where that statement is also being sought to suppress, is not sufficient to justify that this statement was not obtained involuntarily. I think the government was obliged to present the witnesses that apparently were available to justify. They never contemplated criminal proceedings against her, is that correct? That's correct, Your Honor. So they never gave her Miranda warning? That's correct, Your Honor. And I also think that this case cries out for justice because if you look at the circumstances, it's clear that if my client was in fact guilty, her sister was the primary perpetrator because the sister was the one who provided the birth certificate of her own son to be passed off as the birth certificate of the alien nephew, and the sister in her sworn declaration tried to give exculpatory evidence, tried to assure the inspectors that her sister was duped and was innocent of the plan, and yet because my client hadn't been a lawful permanent resident yet for five years, they released the sister. They didn't seek to introduce any kind of statement that she may have made, and they only went after my client knowing that they could obtain a removal order without having to litigate questions for relief. Now if this Court were to amend the case, not just for the board to address that issue that it overlooked, but to actually reopen the proceedings, at this point, my client would be potentially eligible for discretionary relief. She's not a permanent resident now because of the existence of the final order, but were proceedings to be reopened, she would now have her five years of LPR status, and she will have had seven years of being admitted when the proceedings began because her apparent lawful permanent residence can be imputed to her since she was present in this country while still a minor. And I'd like to... I have one question you can say. You said you still have some time. Okay. Coming back to the inspector's manual that you provided to us, page 163, that I'm looking at in paragraph 2, warnings required following an administrative arrest. In the first paragraph of that, it says, Where the alien is in custody and the focus of interrogation shifts to contemplated criminal prosecution, Miranda warnings must be given. I take it you interpret that as being constitutional, Miranda warnings. If criminal prosecution is going to be contemplated, which is not what I'm arguing in this case. Just answer the question. Yes, Your Honor. Okay. The next paragraph is what I think you were citing in your prior statement, is that aliens arrested under Section 287A2 of the Act will be provided with notice of rights and requests for disposition, Form I-826. Upon request, such aliens will be given two hours to contact counsel before questioning can proceed. Now, was your client arrested under 287A2? Yes. Yes, if you look at the Act, 287A2 specifically talks about powers of officers to conduct warrantless arrests. So that's the exact circumstance in this situation. All right. Thank you. And I would like to reserve the balance of my time. You do. Thank you. If you don't use it on. . . I've got it. We'll hear what the government will say. Yeah. Thank you. You've got some time. Good morning, Your Honors, and may it please the Court. Welcome back. Good morning. My name is Jonathan Robbins, and I'm here on behalf of the Respondent Attorney General in this matter. Yes. Good to see you again, Mr. Robbins. You too, Your Honor. There's a particular part of the facts that's being glossed over by the petitioner here that they're just sort of letting fall by the wayside here, and I'll certainly get to the Fourth Amendment and the DHS regulations in a moment. When the petitioner first came to the border in her car with her Mexican citizen nephew and she presented false documentation to smugglers in the country, she spilled the beans to the border officer before any arrest, before any detention. She admitted everything right there. That's in the report of investigation, which they have argued this Court should look at to determine that she was, in fact, arrested. So that's evidence that they're arguing this Court should look at. Now, that right there is pretty significant in terms of regardless of whatever happened in the arrest, regardless of whatever happened with the DHS regulations, she's not going to be able to show prejudice. She admitted everything. There's no way she can claim that she was coerced at the border before any of this arrest and detention took place. So that right there is the nail in the coffin before we get to any analysis of Fourth Amendment issues, of DHS. Is that what the I.J. relied upon in making his decision? Well, he relied upon the analysis in the immigration judge's decision was based on the fact that her new claims, all of a sudden her new claims that she didn't know what was going on and that she had been coerced and made involuntary statements, that came after the fact once she realized that she was in deportation proceedings and realized the consequences of what she had done. And that's the same analysis with what happened at the border, and it's the same thing as what happened during the arrest and detention. Now, as far as... If I recall, maybe I'm right, I read this a long time ago, but did the I.J. say, well, when she came to the primary inspection, this is what she said, and now... Well, he attempts to retract all that, and based on her interview with the examiner and the videotape and whatnot, I find that all... Well, I don't remember exactly if he mentioned the report of investigation. I don't remember. He may or may not. I don't recall that he did, but I may be right. But part of his analysis was also based on the fact that she never actually said anything beyond the fact that she felt coerced, but she didn't show that she was actually coerced. I mean, if you want to establish coercion, they're arguing about the burden shifting to DHS. You can't just simply say, I felt coerced. You have to give some sort of objective evidence that you were, in fact, coerced. They're relying on the petitioner's subjective belief that she was coerced, and that's not enough. You've got to show that you were either intimidated in some way by immigration officers. You've got to show that you may be physically harmed or threatened. She doesn't do any of that. The affidavit in which she provides with her motion as oppressed basically says, I felt coerced because she had been detained overnight. Respectfully, if you try to smuggle an alien through the border, I don't think being detained overnight is a completely unexpected result. You're going to be processed, and they're going to run you through the immigration system. So what you're saying is even if they're correct in their interpretation of the regulation, even if she was under arrest, there's enough evidence in the record, in light of her statements of primary inspection, that you don't need to reach any of this stuff and just ought to be affirmed. Correct. That's your argument. Well, that's part of the argument. That's just probably the strongest part of the argument. But there's certainly arguments to be made as well, particularly with the DHS regulation. As your honors noted, when my colleague here came up initially, the regulation says you've got a responsibility to tell the alien that they're entitled to counsel at no cost to the government and the reason for their arrest once they've been arrested and placed in formal proceedings, which was done here. That's in the notice to appear in the immigration record. Let me just ask you one question. It bothered me about this regulation. I've looked at it and read it. It says the officer will also advise the alien that any statement made may be used against him or her in subsequent proceedings. What's the benefit of that? If it doesn't come before, what good is it? Well, I mean, those are the regulations. I don't think the regulations are designed necessarily to be that good for the immigrant who's come in. Do you think these could be read to mean that once the officers make a prima facie determination that they're going to initiate proceedings against the alien that they need to give them an advisement? I think you read the regulation exactly as what it says. Once they've been placed under arrest and in formal proceedings. It's not the friendliest regulation. What do you think the field manual is up to? Respectfully, this 28-day letter, I never received a copy of this 28-day letter, so I'm not really prepared to talk about it. I don't know if they served it on us or not. It's not in my file. Well, let me just read it to you since we only get to see folks occasionally. Assuming it's an actual field manual, it says, Aliens arrested under 287A2 of the Act will be provided with notice of rights and requests, etc. Upon request, such aliens will be given two hours to contact counsel before questioning can proceed. So why, if we're, as you say, we take the regulation, and if that's how DHS is applying it, it seems to respond to Judge Prias' question, which I have too, as to why give an advisement of right to remain silent or warning in any event that anything you say can be used against you after they've already made the prima facie case and decided to refer out. Right to counsel, maybe. There's some logic because you say, well, we're going to find out whether they're proceeding. But the conclusion of that section seems any statements made, which is past tense, by the way we're going to use them against you, doesn't make any sense, and it doesn't sound like DHS is implementing them. In fact, they're even apparently in the field manual now saying if they ask, if they're smart enough to know before we tell them, we will then wait two hours to give them time to get counsel and not say anything. Well, I think you have a point there, Your Honor, but once again, let me get back to the argument about prejudice. I understand prejudice, okay. We understand that. I'm just trying to figure out, because the problem we have, my take on this is, whether this is the right case or not, given the prejudice, you know, whether there's a prejudice issue. All we have is a BIA decision from, what, 1986. We have all of this ambiguity in the, well, certainly with respect to the warning that I just discussed in the regulation. The board streamlined this. The IJ made a factual error about arrest, which has been pointed out. Well, I don't think the immigration judge found that she wasn't under arrest. That's certainly what the government argued, and that was a mistake. Okay. But that was ultimately harmless because it doesn't matter whether or not she was arrested. The question is, I mean, that wasn't the basis for the decision. The basis for the decision was that she hadn't shown that she had been at all coerced. Well, if the IJ doesn't think she's been arrested, okay, he's looking at the totality of the circumstances. He doesn't think she's been arrested. It's not clear to me that if I'm sitting as a finder of fact, evaluating conduct, and I am operating under the understanding that she's not under arrest, that might factor into my evaluation as to whether there's coercion or not. Because if you're under arrest, that's a different status than simply being questioned. The law recognizes that distinction. What factors into the determination of whether or not there's coercion isn't whether or not there's been an arrest or not. It's whether or not they've met their burden of showing, or at the very least asserting objective facts that they've been coerced. Objective facts includes the fact that you're under arrest. But, I mean, there was no question that she had been detained over this long period of time. Whether or not it's an official arrest or not, I mean, he was still aware of the circumstances under which she was being detained with the Department of Homeland Security. All right. We can debate about that. Well, and again, this brings me back to the prejudice argument. Under the board's case in Ray Garcia Flores, you have to be able to show prejudice. And with these statements that she made before any arrest and before any detention, when she was caught red-handed smuggling somebody, trying to smuggle somebody over the border, that's when we got the truth from her. That's when she spilled the beans and admitted full knowledge that she knew she was smuggling somebody over the border. And that's what they can't really explain away. You can't use the coercion argument. You can't use the argument that I made these involuntary statements at the border there. I mean, that's really ultimately what really hurts their case here. I mean, they haven't explained it away. I mean, they try to say that, oh, this document wasn't certified. This is a report of investigation. But on the other hand, they're telling this court, rely on this documentation as proof that there was an arrest. What's an I-213? The I-213 is a – oh, I'm sorry. The I-213 is the record of deportable aliens. I'm sorry. I used the wrong – what I meant to say was it's the report of investigation here is what they're arguing wasn't certified, not the I-213. I misspoke there. The I-213 is sort of like at the end? The I-213 is the record of deportable alien. In this particular case, it's the declaration that she made under oath after she had been arrested. And again here, if you read this record of deportable alien here, I mean, the statements that she makes, I mean, she says that she was coerced into saying these things, but she never says that the DHS made her say these statements. If you read it, the DHS asks her, are you making these statements voluntarily? Yes, I am. What's the – what's your best language? Spanish. So they have a Spanish interpreter, and they – and we submitted in the record, you know, the Spanish language version of this as well as the English language version. You know, if you read it, she said – you know, they say, well, why did you do it? She said, well, you know, I thought it would be easy, and I – you know, and she even apologized for it. I mean, are they saying that the DHS wrote this script for them to admit, you know, below at these proceedings? And again, with respect to the immigration judge's decision that this wasn't an excludable piece of evidence, you know, the case law is pretty clear here. You know, Fourth Amendment doesn't really apply to immigration proceedings unless you can show an egregious violation, and they haven't shown that here. All she does is say that I felt coerced, but she doesn't say that the DHS made her say these things. So putting her either in arrest or not in arrest, but she's for 18 hours in a holding cell. Well, it's overnight, and, you know – and to be sure, she describes – They come and take her sister out at some point, and she asks for a blanket, and they say, no, you can't have one. Those are for children only. She asks for something to eat, and one of the kids gets something to eat, and she doesn't. I have no doubt, Your Honor, that being in a detention center overnight after you've been caught trying to smuggle somebody in is probably not pleasant, but simply an unpleasant experience of detention – I mean, she never claims that she was physically harmed or threatened or anything of that nature. She's never filed any complaints against immigration officers. She had the opportunity to request the videotape of her deposition at proceedings, and she never did it, and she blames the government for not getting that. I mean, it's her burden to show that she went through these things. She hasn't done anything. It's just these – after the fact, after she's made all these admissions, then she changes her story once she's facing deportation proceedings and saying, oh, I had no idea what was going on, even though I showed up at the border with false documentation. And it's ridiculous. She's claiming that her own nephew, she doesn't know what's going on. I mean, this is her own family that's in the car with her. I mean, she's changing her story, and she's not lying. She's saying, I just felt coerced, which is completely possible if you've been in a detention center. But these claims that she's making, she hasn't shown what she needs to show to show coercion. Those are subjective facts. Being in a detention center overnight, admittedly it's not the most pleasant thing, but that's not enough to show an egregious violation of the Fourth Amendment, particularly where the immigration officers have a transcript of what's going on, and they're saying, are you giving this voluntarily? And she's giving very descriptive accounts of what she did. So I guess there are other things. There's no time unless you want to tell us something of importance that's not in your briefs. Well, it's all in our brief, Your Honor. Thank you very much for your time. Appreciate it. If you'll please, the Court, Your Honor, I'm back for rebuttal. On the government's first point that what hurts our case is the G-166, which is the report of investigation. I think that's an improper post hoc rationalization because nowhere in the immigration judge's decision did he rely on that document.  It was submitted in the administrative record. It was submitted in the administrative record by the government. It's part of the record. That's correct, but it wasn't the basis for the judge's decision. The judge based his decision on the I-213 and on the transcript of the sworn videotape statement, and also the report of investigation wouldn't have been admissible because it's not that I was arguing it wasn't certified. If you look at it, it's at page 109 of the certified administrative record. It says that it's prepared by Special Agent Herbert Day, but where there's the place for the signature, there's no signature, and Herbert Day was the officer that looked at the documents and made the initial determination to send my client to secondary inspection. So then the entire narrative, which is almost verbatim what was stated in the I-213, there's no indication where he got this information. There's nothing in the record showing that Herbert Day himself ever interviewed the client. And as far as the arguments on the 213, the 213 does have narrative from the officer that allegedly petitioner told that she was knowledgeable about the fact that her nephew didn't have proper documents, but that isn't certified properly, in my opinion. The government disagrees with me, but on every other document that was presented, there's on the back of each page a stamp and then the certifying officer's signature, but on the actual first page of the 213 that has the officer's observations, that's not signed. It's the second page that has the information that we allege was obtained improperly because advisals weren't given. Only that page has the certification. There's numerous holes in the government's case where you consider the standard is they have to show by clear and convincing evidence removability. And I do think that the circumstances are extremely suspicious, and I agree that had they put petitioner on the stand and tried to bring to her attention the discrepancy between what she said in her sworn videotape statement and what she said in her declaration and put her sister on the stand, this could be a completely different case. But it seems to me like in the Alta Morana case that Your Honor decided, there it was based pretty much on the declaration. There was no adverse credibility, no express adverse credibility made in either my case or in the Alta Morana case, so it was basically almost like a summary judgment where it was just based on the assertions. The judge, in not allowing petitioner to testify, agreed that he'd accept the offer of proof that she'd testify exactly as the facts stated in her declaration. So how can you find that there's clear and convincing evidence of removability just based on circumstantial evidence when it's a he says, she says situation? If the confession is allowed into evidence, I still don't think that the government met its standard because the judges, under evidentiary rules created by the BIA and this court, is supposed to accept as true statements and affidavits unless they're inherently unbelievable, unless there's going to be a hearing in which the affian is cross-examined. Also, on your point that the regulation doesn't seem to make much sense, is why would advisals be given after an interrogation has already occurred and incriminating evidence has been obtained? I think this court has a duty, if they're not going to find that there's a constitutional right to have some due process in these arrest situations, to at least apply constitutional avoidance if there's any kind of ambiguity and to try to reconcile the regulations in a way that wouldn't offend constitutional concern. Well, it could just be a warning, you know, that statements that you made will be used against you so you better be, you know, you better be aware of that. Right. And it goes up at the next hearing. You know, if you tell a different story, these are going to be used against you. What you said before is going to be used against you. Well, that's true. That would be a way to reconcile it. But, you know, it again goes to the prejudice. The government seems to assume that there's no prejudice. But I have two points on that. Is the prejudice that she was innocent and so, therefore, the fact that, you know, just to get out of there, she confessed? Or is the prejudice that had she known of her rights, she wouldn't have incriminated herself? Prejudice doesn't have to be that the petitioner was innocent. It just has to be that her right to retain her lawful permanent residence by holding the government to its proof was impinged because these statements were obtained in violation of the regulations. Okay. We understand that, I think. Before your time expires, I have two questions. One, did you serve a copy of the field manual on counsel? You said they did that. Yes, I did the 28-J letter. Yes, I served both this court by fax and then I served it with the San Francisco court by express mail. And I sent a copy to the government as well. Okay. All right. We'll take your representation. On the certification issue that you adverted to, was that raised before the BIA? No, it wasn't, Your Honor. But it just goes to countering the government's argument that regardless of what the judge based his decision on, the other information in the record, you know, shows that there couldn't possibly be any prejudice. And I think, Your Honors, ought to look carefully at the language of the BIA's decision in a matter of Garcia-Flores, because I have since, reading the government's brief, looked at how it's been interpreted and has been interpreted to require a showing of specific prejudice. But the actual language used by the board in that decision is for an entire procedural framework designed to ensure the fair processing of an action affecting an individual is created but then not followed by an agency. It can be deemed prejudicial. And there's a long line of older Supreme Court cases, beginning with Accardi and Wharton v. Ruiz and Bridges v. Wixton, that it's kind of anomalous that a constitutional violation or an alleged constitutional violation isn't enough to get evidence suppressed. But the case law has never been overruled that the agency is required to follow its own regulations. And if it doesn't, then proceedings can be invalidated on that basis. One last question. Yes, sir. I was looking at I.J.'s decision. Did he make a finding that she was not under arrest? What I have for that is at the oral decision, the judge said, the court has considered the respondent's contentions and concludes that the immigration officers at the port of entry had the right to detain the respondent for questioning. And that followed a lot of discussion in the records, not in the oral decision that's cited by the government, where the judge's statements made it pretty clear that he was agreeing with the government attorney that it was a brief detention of 18 hours. I'll have to go back. It's been a while since I looked at the whole transcript of the proceedings. Okay. Thank you. Thank you. Thank both counsel. The case is submitted.
judges: Fisher, Paez, Robart